UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-1068-GW (JEMx) | Date | April 21, 2016 |
|---|---|---|---|
| Title | *Carlos Gonzalez v. Starwood Hotels and Resorts Worldwide, Inc., et al.* | | |

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Tessa King | Reed E. Schaper |

**PROCEEDINGS:** **PLAINTIFF'S MOTION FOR REMAND AND REQUEST FOR ATTORNEY FEES AND SANCTIONS IN THE AMOUNT OF $6,874.94 [15];**

**SCHEDULING CONFERENCE**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Plaintiff's Motion is DENIED.

The Court continues the scheduling conference to April 28, 2016 at 8:30 a.m. Parties will file a joint scheduling statement by noon on April 26, 2016.

                                                        :    17

                                    Initials of Preparer    JG

<u>*Gonzalez v. Starwood Hotels & Resorts Worldwide, Inc., et al.*</u>, Case No. CV-16-1068-GW
Tentative Ruling on Motion to Remand

### I. <u>Background</u>

On February 25, 2015, Carlos Gonzales ("Plaintiff") filed this action in the Los Angeles Superior Court asserting 17 California state-law claims (including several violations of the Fair Employment and Housing Act, California Government Code § 12940 *et seq.*) against Starwood Hotels & Resorts Worldwide, Inc. ("Starwood"); 5662 The Westin - Los Angeles ("Westin");[1] Timothy McDonald ("McDonald"); and additional DOES defendants (collectively, "Defendants"). *See generally* Complaint, Docket No. 1-1. On July 21, 2015, Plaintiff filed a DOE amendment naming Sheraton Operating Corporation ("Sheraton") as a Defendant. *See* Decl. of Benjamin Treger ("Treger Decl."), Docket No. 7-1 at 4-5. The Complaint alleges that Plaintiff is a citizen of California and that Starwood and Westin are California corporations "having their principal places of business in the County of Los Angeles." Complaint ¶¶ 3-4. The Complaint also alleges that McDonald is "an individual residing in the County of Los Angeles."[2] *Id.* ¶ 5. The Complaint does not state the amount Plaintiff seeks in damages.

The parties engaged in discovery and, prior to Defendants' removal, had a trial date scheduled for June 7, 2016. *See* Motion to Remand at 2:14-19. On April 2, 2015, Defendants propounded Requests for Admission seeking admissions or denials related to the amount in controversy. *See* Treger Decl. Ex. A, Docket No. 17-2 at 5-7. On May 13, 2015, Plaintiff served its Responses to Defendants' Requests for Admission, which did not provide substantive responses to any requests and objected to each as "compound." *See* Treger Decl. Ex. B, Docket No. 17-2 at 9-15. Defendants then propounded special interrogatories asking Plaintiff to state the amount of damages suffered and the relevant calculations, but Plaintiff again did not provide substantive responses to the interrogatories. *See* Treger Decl. Ex. C, Docket No. 17-2, at 17-28.

On February 10, 2016, Defendants' counsel sent an email to Plaintiff's counsel requesting a reasonable settlement demand "tethered to the value of the case." *See* Decl. of Reed

---

[1] Defendants contend that "5662 The Westin – Los Angeles" is an internal designation for the specific property at which Plaintiff worked and is not a legal entity. *See* Notice of Removal at 3 n.1, Docket No. 1; Decl. of Kerry DeBellonia ¶ 3, Docket No. 1-5.

[2] Sheraton's citizenship is not alleged in the Complaint or the DOE amendment.

1

Schaper ("Schaper Decl.") Ex. D at 1-2, Docket No. 6 at 95-96.  Plaintiff's counsel responded by email and stated that during the parties' mediation on January 27 it had "conveyed to [Defendants] a demand of $150,000 (a fairly reasonable starting point in our view)." *Id.* at 1, Docket No. 6 at 95.  Starwood and McDonald thereafter filed a Notice of Removal in this Court on February 16, 2016.  *See* Notice of Removal, Docket No. 1.  On February 19, 2016, Sheraton filed a Notice of Joinder in which it joined in the removal.  *See* Joinder, Docket No. 7. Defendants contend that removal is warranted because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, as established by Plaintiff's settlement offer of $150,000.  *See* Notice of Removal at 3:7-15, Docket No. 1.  Plaintiff now moves to remand this action on the grounds that (1) Defendants failed to establish complete diversity of citizenship, (2) Defendants failed to establish that the amount in controversy exceeds $75,000, (3) Defendants' removal was untimely, and (4) Sheraton failed to join in the removal. *See* Mot. to Remand at 1:3-27, Docket No. 15.  Defendants filed an Opposition to Plaintiff's Motion on March 31, 2016, *see* Opp'n, Docket No. 17, and subsequently filed an Amended Opposition the same day.  *See* Am. Opp'n, Docket No. 19.  Plaintiff filed a Reply on April 7, 2016.  *See* Reply, Docket No. 23.

## II. **Legal Standard**

"Federal courts are courts of limited jurisdiction," and have subject matter jurisdiction only to the extent "authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 136-137 (1992); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986)).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)).  The removal statute is strictly construed against removal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988); *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985); *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).

To invoke diversity jurisdiction, the party asserting jurisdiction must establish that there is complete diversity of citizenship between the parties and that the amount in controversy

exceeds $75,000. *See* 28 U.S.C. § 1332(a). For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983) (citations omitted). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (citing *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957)). A person's domicile is the place he or she physically resides with intent to make it a fixed and permanent home, while residence means living in a particular locality. *See id*. (citing *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986)).

For diversity purposes, a corporation is a "citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The phrase "principal place of business" means the place where a corporation's board and high level officers direct, control and coordinate its activities, also referred to as its "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 92-93 (2010). "In practice it should normally be the place where the corporation maintains its headquarters— provided that the headquarters is the actual center of direct, control, and coordination." *Id.* at 93. Where it is "unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," the party seeking removal bears the burden of establishing by a "preponderance of the evidence" that the $75,000 amount in controversy requirement is met. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (citations omitted).

The removal statute also imposes procedural requirements, the failure to comply with which can result in remand. *See* 28 U.S.C. § 1447(c); *Gray v. Moore Bus. Forms, Inc.*, 711 F.Supp. 543, 544 (N.D. Cal. 1989) ("A diversity action will be remanded to state court for two reasons: (1) lack of subject matter jurisdiction; and (2) procedural defects in the removal process."). These requirements provide that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1); *see also Parrino v. FHP, Inc.*, 146 F.3d 699, 703 (9th Cir. 1998) ("[A] proper removal notice must be filed within 30 days of service of the plaintiff's complaint."). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may

3

first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).  However, diversity cases in which the initial pleading is not removable "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).

### III. <u>Analysis</u>

#### A. *Defendants Have Established Complete Diversity of Citizenship*

Plaintiff argues that Defendants failed to provide sufficient evidence that complete diversity of citizenship exists between the parties.  *See* Mot. to Remand at 6:26-10:20.  Specifically, Plaintiff contends that the declarations submitted in support of each Defendant's citizenship are insufficient to establish their citizenship.  *See* Mot. to Remand at 6:27-10:20.

1. <u>Starwood and Sheraton's Citizenship</u>

Starwood and Sheraton are both corporations and thus are citizens of the states where they are incorporated and where their principal place of business is located.  *See* Decl. of Kerry DeBellonia ("DeBellonia Starwood Decl.") ¶ 2, Docket No. 1-5; Decl. of Kerry Debellonia ("DeBellonia Sheraton Decl.") ¶ 3, Docket No. 7-2.  In its removal papers, Starwood submitted the Declaration of a Senior Paralegal, Kerry DeBellonia ("DeBellonia"), stating that, based on DeBellonia's "personal knowledge," Starwood is incorporated in Maryland and has its principal place of business in Connecticut.  *See* DeBellonia Starwood Decl. ¶ 2, Docket No. 1-5.  In support of this statement, DeBellonia states that Starwood's headquarters are located in Stamford, Connecticut and that "the large majority of the officers of [Starwood] work[] in the Connecticut headquarters and, when decisions are made about the business of [Starwood], such decisions are made by those officers in Stamford, Connecticut."  *Id.*  Similarly, in its Notice of Joinder, Sheraton submitted a second Declaration of DeBellonia stating that Sheraton is a subsidiary of Starwood and is incorporated in Delaware, with its principal place of business in Connecticut.  *See* Decl. of  Kerry DeBellonia ("DeBellonia Sheraton Decl.") ¶ 3, Docket No. 7-2.  In the Sheraton Declaration, DeBellonia also states that "the large majority of the officers of [Sheraton] works in the Connecticut headquarters and, when decisions are made about the business of [Sheraton], such decisions are made by those officers in Stamford, Connecticut."  *Id.* at ¶¶ 1, 3.  The Sheraton Declaration further specifies that specifies that DeBellonia is the

4

"Manager, Senior Corporate Paralegal" for Starwood and Sheraton.[3] *Id.*

Plaintiff contends that "the conclusory declaration of a paralegal who lacks personal knowledge to establish that Defendant Sheraton or Defendant Starwood's principal place of business is outside of California" is insufficient to establish Starwood and Sheraton's citizenships. *See* Mot. to Remand at 8:10-13. Plaintiff further asserts that "there are glaring deficiencies in Ms. DeBellonia's declarations demonstrating that she lacks the personal knowledge to come to these conclusions, including not declaring how long she has allegedly worked for Defendant Starwood, or how she knows or obtained the knowledge of where Defendants' principal place of business is." *Id.* at 9:10-14. Additionally, Plaintiff argues that DeBellonia "is not an officer, director, or other high ranking official of either Starwood or Sheraton who would be able to declare where the 'decisions' are made about the business or where the large majority of officers are." *Id.* at 19-23.

Here, the Declarations represent that based on DeBellonia's "personal knowledge," both Starwood and Sheraton's principal place of business is Connecticut. *See* DeBellonia Starwood Decl. ¶¶ 1-2, Docket No. 1-5; DeBellonia Sheraton Decl. ¶¶ 1, 3, Docket No. 7-2. Moreover, the Declarations list specific factors on which DeBellonia bases her statements. *Id.* Plaintiff does not cite to any legal authority for its contention that the Declarations are insufficient to establish Starwood and Sheraton's principal place of business. In fact, the Ninth Circuit and courts in this district have found similar declarations sufficient to establish a corporation's citizenship. *See Bashir v. Boeing Co.*, 245 F.App'x 574, 575 (9th Cir. 2007) (finding corporation's declaration of citizenship adequately supported by signed declaration of corporation's attorney); *Barbosa v. Transp. Drivers, Inc.*, No. ED CV 15-1834-DMG (DTBx), 2015 WL 9272828, at *3 (C.D. Cal. Dec. 18, 2015) (corporation adequately established its principal place of business by submitting declarations stating the location of its headquarters and indicating that this location was "where its corporate officers direct, control, and coordinate activities"); *Hawkins v. Fed. Express Corp.*, No. 109-CV-1905 AWI GSA, 2010 WL 596318, at *4 (E.D. Cal. Feb. 16, 2010), *report and recommendation adopted*, No. 1:09-CV-1905 AWI-GSA, 2010 WL 1286845 (E.D. Cal. Mar. 29,

---

[3] Plaintiffs argue that DeBellonia's Sheraton Declaration, which specifies that she is a Manager and Senior Corporate Paralegal for Starwood and Sheraton, "should be disregarded as it is filed late." *See* Mot. to Remand at 8:23-9:1, Docket No. 15. However, the Sheraton Declaration was filed along with Sheraton's Joinder on February 19, 2016, well within the 30-day time period for removal. *See* DeBellonia Sheraton Decl., Docket No. 7-2. Moreover, the Supreme Court has made clear that "it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits." *See Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969).

2010) (attorney's declaration stating corporation's principal place of business was adequate to establish citizenship where declaration "was prepared for this case under penalty of perjury and indicate[d] that [the declarant's] statements are based on personal knowledge").  Given that the Declarations indicate they are based on the personal knowledge of a Senior Paralegal employed by Starwood and provide specific factors supporting those statements, the Court can discern no reason why they would be insufficient to establish the citizenship of Starwood and Sheraton.  *See Schnabel v. Lui*, 302 F.3d 1023, 1032 (9th Cir. 2002) ("Information regarding the principal place of business of the corporate Defendants [is] uniquely within Defendants' capacity to ascertain.").

In addition, Plaintiff asserts that, regardless of Defendants' evidence to the contrary, Starwood's principal place of business is in California because its website "boasts to having over 76 hotels in California" and advertises "160 open employment positions" in Los Angeles.  *See* Mot. to Remand at 9:24-27.  Plaintiff further asserts that Sheraton's principal place of business is in California because "its website states it has 21 hotels in California."  *Id.* at 9:2-3.  However, the Supreme Court has expressly rejected the idea that a corporation's principal place of business is determined by the level of its business activity within a state, holding instead that it is determined by a corporation's "nerve center."  *See Hertz Corp.*, 559 U.S. at 93-94; *see also Delvalle v. Airport Shoppes and Hotels Corp.*, No. 13-cv-8308 (RJS), 2014 WL 4159989, at *2 (S.D.N.Y. August 20, 2015) (denying plaintiff's motion to remand where plaintiff introduced evidence that defendant had numerous hotels and employees in a different state from its headquarters, reasoning that "there is nothing inconsistent, or even unusual, about a corporation operating a significant part of its business in a state, while controlling that business though its 'nerve center' in a different state").  Indeed, Plaintiff does not provide any evidence indicating that California is the center of either Starwood or Sheraton's corporate control or that California is where Starwood or Sheraton's executive and administrative functions are performed.  As such, the Court would conclude that Starwood is a citizen of Maryland and Connecticut and Sheraton is a citizen of Delaware and Connecticut.  *See Calimpusan v. Wells Fargo Bank, N.A.*, No. CV 15-08452-AB (KLSx), 2015 WL 9581727, at *3 (C.D. Cal. Dec. 28, 2015) (denying motion to remand where plaintiffs did not assert evidence contravening defendant's citizenship as stated in removal notice).

    2. McDonald's Citizenship

The Complaint alleges that McDonald "resides in California."  Compl. ¶ 5, Docket No. 1-

6

1.  However, McDonald has submitted a Declaration stating that he is a citizen of Texas. *See* Decl. of Timothy McDonald ¶ 2, Docket No. 17-1. In his Declaration, McDonald specifically states that he "live[s] in San Antonio, Texas, receives mail at my San Antonio address, works in San Antonio, owns a vehicle registered in Texas, and intend[s] to remain in Texas indefinitely." *Id.* ¶ 3. Plaintiff contends that McDonald's Declaration is "strangely worded, conclusory," and does not specify that McDonald is domiciled in Texas. *See* Mot. to Remand at 10:16-20. However, McDonald's statements that he is a citizen of Texas, resides in San Antonio, and intends to remain in Texas are sufficient to establish that he is a citizen of Texas. *See Socoloff v. LRN Corp.*, No. CV 13-4910-CAS (AGRx), 2013 WL 4479010, at *3 (C.D. Cal. Aug. 19, 2013) (holding that defendant's statement that he was a citizen of a certain state, without mentioning domicile, was not conclusory and was sufficient to establish diversity of citizenship on removal).

      3.  Conclusion

For the foregoing reasons, the Court would conclude that there is complete diversity of citizenship between Defendants and Plaintiff.

### B. *Defendants Have Adequately Established the Amount in Controversy*

Plaintiff asserts that Defendants have failed to establish "summary type evidence that this case is worth in excess of $75,000[,] especially no 'other paper' as required by § 1446(b)." *See* Mot. to Remand at 11:7-9, Docket No. 15. Specifically, Plaintiff asserts that Defendants' only evidence that the action is worth more than $75,000 is Plaintiff's counsel's "verbal negotiations made for mediation." *Id.* at 11:9-11. However, Defendants submitted written email communications between Plaintiff's and Defendants' counsel in which Defendants' counsel requested a settlement demand "tethered to the value of the case." *See* Decl. of Reed Schaper ("Schaper Decl.") Ex. D at 1-2, Docket No. 6 at 95-96. In response, Plaintiff's counsel stated that during the parties' mediation on January 27, Plaintiff had "conveyed to [Defendants] a demand of $150,000 (a fairly reasonable starting point in our view)." *Id.* at 1, Docket No. 6 at 95.

The Ninth Circuit has held that a document reflecting a settlement demand in excess of the jurisdictional minimum constitutes "other paper" under 28 U.S.C. § 1446(b)(3) sufficient to provide notice of the amount in controversy and trigger the 30-day period for removability. *See Babasa v. Lenscrafters, Inc.*, 498 F.3d 972, 974-75 (9th Cir.2007) (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir.2002)). This is because "[a] settlement letter is relevant evidence of

7

the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." Cohn, 281 F.3d at 840 (citing *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 428-30 (7th Cir.1997)).  In *Cohn*, the Ninth Circuit held that a settlement letter on its own could establish the amount in controversy where the plaintiff did not seek to "disavow the letter or offer contrary evidence."  *Cohn*, 281 F.3d at 840.  Other courts have found a defendant's burden to establish the amount in controversy met by a plaintiff's settlement offer during mediation combined with a plaintiff's refusal to respond to requests for admission regarding the amount in controversy.  *See Chase*, 110 F.3d at 428.

Here, Plaintiff's counsel's email to Defendants' counsel reiterating its previous settlement offer of $150,000 is sufficient to establish that the amount in controversy is above $75,000.  The email qualifies as "other paper" as defined by § 1446(b).  *See Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 80 (1st Cir. 2014) (internal quotations and citations omitted) (holding that an email "qualifies as an other paper from which it may first be ascertained that the case is one which is . . . removable"); *Bea v. Encompass Ins. Co*., No. CV-13-00008-JLQ, 2013 WL 1747910, at *2 (N.D. Cal. Apr. 23, 2013) ("The term 'other paper' includes written discovery responses, settlement offers, demand letters, deposition testimony, and correspondence between counsel.").

Although Plaintiff argues that "a[s] is common in the practice, demands made to attend mediation are usually inflated and usually are not the amount the case settles for" and that "Plaintiff continues to work for Defendants and has no loss of earnings," Mot. to Remand at 11:23-27, Plaintiff has not asserted that $150,000 is not a serious valuation of his claims, nor has Plaintiff indicated whether there is a different amount that would be more accurate.  *Cf. Graybill v. Khudaverdian*, No. SACV 15-01627-CJC(JCGx), 2015 WL 7295378, at *4 (C.D. Cal. Nov. 17, 2015) (granting motion to remand where plaintiff disavowed settlement letter and affirmed his claim was valued at $42,000).  Indeed, Defendants specifically requested a settlement demand "tethered to the value of the case," and Plaintiff replied with a value Plaintiff indicated was a "reasonable starting point."  *See* Decl. of Reed Schaper ("Schaper Decl.") Ex. D at 1-2, Docket No. 6 at 95-96.  Moreover, prior to the email communications, Plaintiff refused to respond to discovery directed at determining the amount in controversy.  Absent additional information from Plaintiff indicating that $150,000 is an inaccurate value of its claims, the Court

8

would hold that Defendants have adequately established the amount in controversy.[4]

### C. Defendants' Removal was Timely

Plaintiff further contends that Defendants failed to timely remove this action. *See* Mot. to Remand at 4:7-5:4, Docket No. 15. Plaintiff claims that Defendants "fail to explain why they waited until almost a year later to come to the 'knowledge' that the case allegedly is worth more than $75,000, even though discovery was conducted in this case." *Id.* at 4:24-26. However, Defendants assert they were unable to remove the case because they could not ascertain that the amount in controversy was above the jurisdictional threshold. *See* Notice of Removal at 4:15-23, Docket No. 1. In support of this assertion, Defendants point to the fact that the Complaint does not indicate the amount of damages and that Defendants propounded discovery targeted at determining the amount in controversy, but were unable to elicit any relevant information from Plaintiff. *See id.*; Treger Decl. Ex. A-C, Docket No. 17-2 at 5-28. Moreover, upon receiving Plaintiff's email on February 10, 2016 reiterating Plaintiff's verbal settlement offer, Starwood and McDonald promptly removed the case on February 16, 2016. *See* Notice of Removal at 4:24-5:14. Sheraton thereafter joined the removal on February 19, 2016. *See* Joinder, Docket No. 7. Both the Notice of Removal and Joinder were filed well within the 30-day period for removal under Section 1446(b)(3). *See Ackerberg v. Citicorp USA, Inc.*, 887 F. Supp. 2d 934, 938-39 (N.D. Cal. 2012) (where complaint did not provide explicit statement regarding amount in controversy, defendants timely removed within thirty days of receipt of settlement letter first indicating amount in controversy). As such, the Court should find that Defendants' removal was timely.

### D. All Defendants Properly Joined in Removal

Plaintiff asserts that the removal was procedurally improper because Sheraton did not join in the Notice of Removal. *See* Mot. to Remand at 5:8-24. The Ninth Circuit has noted that

---

[4] In their Opposition, Defendants contend that Plaintiff's Motion to Remand provides further evidence that the amount in controversy threshold is met, because Plaintiff seeks sanctions and attorneys' fees totaling $54,874.94. *See* Am. Opp'n at 11:17-12:5, Docket No. 19. Plaintiff replies that attorneys' fees are not to be considered in determining the amount in controversy because Section 1332(a) states that the "amount in controversy must exceed $75,000 exclusive of interests and costs." *See* Reply at 5:7-15, Docket No. 23; 28 U.S.C. § 1332(a). However, the Ninth Circuit has clarified that *only* interest and costs are excluded from the calculation of the amount in controversy; attorneys' fees may be included. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007). Thus, the Court may also consider Plaintiff's request for attorneys' fees and sanctions in the amount of $54,874.89 in determining whether Defendants have established by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold.

9

while no "federal rule or statute specifically prescribe[s] a particular manner in which [a] codefendant's joinder must be expressed," a notice of removal "can be effective without individual consent documents on behalf of each defendant." *Proctor v. Vishay Intertechnology In*c., 584 F.3d 1208, 1225 (9th Cir. 2009). Here, Starwood and McDonald filed their removal papers on February 16, 2016 and Sheraton filed a Joinder on February 19, 2016. Plaintiff has provided no authority indicating why this procedure was improper; indeed, Sheraton's individual joinder is more than sufficient to establish its consent to removal under Ninth Circuit precedent. *See also Destfino v. Reiswig*, 630 F.3d 952, 956-57 (9th Cir. 2011) (where not all defendants join in the initial notice of removal, "the district court may allow the removing defendants to cure the defect by obtaining joinder of all defendants prior to the entry of judgment"). The Court would therefore conclude that all Defendants properly consented to removal.

## IV. Conclusion

For the foregoing reasons, the Court should DENY Plaintiff's Motion to Remand. As such, the Court should also DENY Plaintiff's Request for Attorneys' Fees.

## V. Evidentiary Objections

### A. *Plaintiff's Request for Evidentiary Ruling on Specific Objections, Docket No 15-4*

1. Overruled.
2. Overruled.
3. Overruled.
4. Overruled.
5. Overruled.
6. Overruled.
7. Overruled.
8. Overruled.
9. Overruled.
10. Overruled.
11. Overruled.
12. Overruled.
13. Overruled.
14. Overruled.
15. Overruled.
16. Overruled.
17. Overruled.